**CRAWFORD COUNTY, Appellant,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD and AFSCME, District Council 85, AFL–CIO.**

Commonwealth Court of Pennsylvania.

Argued March 16, 1995.

Decided May 26, 1995.

---

Vicki L. Beatty, for appellant.

Peter Lassi, for appellee Pa. Labor Relations Bd.

William H. Haller, for appellee AFSCME.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Crawford County (County) appeals from the order of the Court of Common Pleas of Crawford County (trial court) which affirmed the decision of the Pennsylvania Labor Relations Board (PLRB) finding that the County committed an unfair labor practice in violation of Section 1201(a)(5) of the Public Employe Relations Act (Act 195).[1] We affirm the trial court.

The County presents the following questions for review: 1) whether the County committed an unfair labor practice when it unilaterally implemented a no-smoking policy in the jail facility on July 1, 1991; and 2) did the Union waive its right to bargain over the implementation of the County's said smoking policy.

The hearing examiner issued a proposed decision and order concluding that the County had not committed an unfair labor practice in violation of Act 195. The Union filed exceptions to the proposed decision and order. Thereafter, the PLRB issued a final order reversing the decision of the hearing examiner and concluding that the County had, in fact, committed an unfair labor prac-

1. Act of July 23, 1970, P.L. No. 195, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

Section 1201(a)(5) states:

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to

tice. The County appealed to the trial court which affirmed the decision of the PLRB.[2]

With regard to the first question, the County argues that the implementation of the revised no-smoking policy on July 1, 1991, was a matter of its inherent managerial prerogative and, as stated by the trial court:

> The motivation behind the implementation of the no-smoking policy was twofold. First, there was [sic] the health concerns of the exposure to second-hand smoke by inmates and prison employees. Secondly, there was the safety concern over fires at the prison which prompted the ban. Substantial and credible testimony was presented as to each of these concerns. Neither the Union nor the PLRB challenged that these were actually the motivational factors behind the ban. It is also not disputed that the health and safety concerns are legitimate ones. The question is whether and to what extent these concerns are within the *basic policy of prison as an enterprise* (emphasis added).

The relevant facts briefly are as follows. AFSCME, District Council 85, AFL–CIO (Union), is the exclusive bargaining representative for the corrections officers (guards) at the County's Jail (Jail). The main portion of the jail was built in 1849. In 1992, the average daily inmate population of the jail was 84, with approximately 22 full-time jail guards and 22 guards on a per diem basis. In 1989, prior to making rules relating to smoking within the jail, smoking was permitted in all areas of the jail by inmates and employees, including guards. During the period of the gradual implementation of the no-smoking policy, the Warden discussed the changes with the Union steward who never raised any objection to the changes. In fact, until the filing of the unfair labor practice charges, no Union representative ever complained about the implementation of no-smoking areas and the majority of the em-

ployees signed a petition requesting a no-smoking ban throughout the jail. By the end of 1990, approximately 75% of the jail had a no-smoking policy. The County, however, concedes that its revised smoking policy prohibiting smoking anywhere inside the jail, effective July 1, 1991, was implemented unilaterally and without affording the Union an opportunity to bargain with respect thereto. On July 15, 1991, the Union filed its unfair labor practice charge against the County.

The County argues that the implementation of the no-smoking ban on July 1, 1991, was a matter of inherent managerial policy concerning the basic policy of the prison as an enterprise and therefore, a matter of permissive and not mandatory bargaining under Section 702 of Act 195. We disagree.

Section 702 of Act 195 is the exception to the general rule established by Section 701 of Act 195. 43 P.S. § 1101.702. Section 701 requires public employers and the representative of public employees to bargain in good faith over wages, hours and other terms and conditions of employment. 43 P.S. § 1101.701. Section 701 of Act 195 provides as follows:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employees to meet at reasonable times and confer in good faith with respect to *wages, hours and other terms and conditions of employment,* or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached by such obligation does not compel either party to agree to a proposal or require the making of a concession.

43 P.S. § 1101.701 (emphasis added).

> Section 702 of Act 195 provides as follows:
>
> Public employers shall not be required to bargain over matters of inherent manage-

---

the discussing of grievances with the exclusive representative.

**2.** It is well settled that a decision of the PLRB must be upheld if the Board's findings are supported by substantial evidence, and if its conclusions of law drawn from those facts are reasonable, not capricious, arbitrary or illegal. *Joint Bargaining Committee of Pennsylvania Social Ser-*

*vices Union v. Pennsylvania Labor Relations Board,* 503 Pa. 236, 469 A.2d 150 (1983); *Commonwealth v. Pennsylvania Labor Relations Board,* 502 Pa. 7, 463 A.2d 409 (1983); *Abington Transportation Association v. Pennsylvania Labor Relations Board,* 131 Pa.Commonwealth Ct. 267, 570 A.2d 108 (1990).

rial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers however shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employee representatives.

43 P.S. § 1101.702.

Whether a particular matter falls within the scope of Section 702, rather than Section 701, is determined by applying the balancing test established by our Supreme Court in *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). In *State College*, the Court specifically held:

> [W]here an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch *upon basic policy.* It is the duty of the [PLRB] in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.

461 Pa. at 507, 337 A.2d at 268 (emphasis added).

Section 701 of Act 195 provides that employers have a mandatory duty to bargain with respect to wages, hours, and "other terms and conditions of employment." The concept of *"other terms and conditions of employment"* within Act 195 is in itself a broad one. It refers to such things as, but not limited to, various physical conditions of one's working surroundings, what quantity and quality of work is required during one's work period, what safety practices prevail at and near the job site, what sick and other hospital benefits are available, what vacation benefits are available, what retirement benefits will be provided and how eligibility will be determined. *State College Educational Association v. Pennsylvania Labor Relations Board*, 9 Pa.Commonwealth Ct. 229, 306 A.2d 404 (1973), *remanded*, 461 Pa. 494, 337 A.2d 262 (1975). The United States Supreme Court in *Ford Motor Co. (Chicago Stamping Plant) v. National Labor Relations Board*, 441 U.S. 488, 498, 99 S.Ct. 1842, 1850, 60 L.Ed.2d 420 (1979) described the terms and conditions of employment as those matters which "are plainly germane to the 'working environment'" and "not among those 'managerial decisions, which lie at the core of entrepreneurial control.'" As relevant to the work environment, while it is true that employee smoking does not affect the hours they work, the amount they will earn for their work or alter their job descriptions, the County has always permitted its guards and employees to smoke in all areas of the jail, including but not limited to the work areas, break rooms and hallways. One may justifiably presume that those employees, who did smoke, did so in order to help pass the time while working or to relax during break periods. In these circumstances, the employees right to smoke was nothing less than a work related privilege. Section 702 on the other hand, provides for inherent managerial policy which includes the essential element of the right to: 1) manage the affairs of its business, operation or activity; and 2) make decisions that determine the policy and direction that the business, operation or activity shall pursue.

█ Whether a particular matter falls within the scope of Section 702, rather than Section 701, is determined by applying the balancing test established by the Supreme Court in the *State College* case. When the PLRB is confronted with a case involving the determination of whether a certain subject requires mandatory bargaining, it must balance the impact of the issue on the interest of the employee and wages, hours, terms and conditions of employment against the probable effect of the issue on the basic policy of the system as a whole. *Council 13, American Federation of State, County and Municipal Employees, AFL–CIO v. Pennsylvania Labor Relations Board*, 84 Pa.Common-

wealth Ct. 458, 479 A.2d 683 (1984). The test is to weigh the employees interest in the terms and conditions of their employment against the employer's interest in directing the overall scope and direction of the enterprise. *Commonwealth v. Pennsylvania Labor Relations Board,* 78 Pa.Commonwealth Ct. 419, 467 A.2d 1187 (1983).

■ Since the balancing test approach set forth in *State College* must be applied on a case by case basis, we accordingly further limit the issue presented to us to the facts surrounding the smoking ban policy put into effect by the County. In applying the balancing test, the PLRB determined in *Chambersburg Area School District v. Pennsylvania Labor Relations Board,* 60 Pa.Commonwealth Ct. 29, 430 A.2d 740 (1981), that the smoking ban was justified as an exception to the collective bargaining obligation because it was essential to the school district's basic mission of education. On the other hand, the rationale sailing under a slightly different ship, in *Commonwealth v. Pennsylvania Labor Relations Board,* 74 Pa.Commonwealth Ct. 1, 459 A.2d 452 (1983), the smoking ban did not directly interfere with the agency's essential mission and thus, was a mandatory subject of bargaining with the union.

It is perfectly clear that the legislation (Act 195) delegated to the PLRB the adjudicatory neutral position in the collective bargaining process and framework and the responsibility to determine whether the County's smoking ban affected its basic mission. The courts have repeatedly held that we must defer to the PLRB's interpretation of its own statute against competing interpretations. This is so because the need for expertise and judgment in drawing the line between negotiable and non-negotiable proposals is ultimately within the unique jurisdiction of the PLRB, whose decisions, if supported by substantial evidence, and conclusions, based thereon, are reasonable and not capricious, arbitrary or illegal, must be sustained. *Joint Bargaining Committee of Pennsylvania Social Services Union; Commonwealth v. Pennsylvania Labor Relations Board.*

In this case, we believe the deference to the final order of the PLRB, affirmed by the trial court, is warranted because of the conclusions of law and findings made therein. Accordingly, we hold that the PLRB acted reasonably in concluding that the County committed an unfair labor practice by unilaterally implementing a total no-smoking ban on July 1, 1991 and that it failed to meet its burden demonstrating that the smoking ban in the jail facility was essential to the County's basic mission. We reject the County's argument that it cannot perform its mission without such a smoking ban.

The second issue raised by the County concerns the PLRB's conclusion that the parties' collective bargaining agreement (CBA) did not provide a waiver by the Union of its right to bargain over the total smoking ban of July 1, 1991. The County cites the CBA management rights clause, which in part provides that the employer at its sole discretion possesses the sole right to manage all operations including the direction of the working force and to establish reasonable work rules and schedules of work, and also that the County agrees to make reasonable provisions for the health and safety of all employees. The latter provision the County claims gives the County the right to unilaterally implement the no-smoking ban rule in order to make reasonable provisions for the health and safety of its employees. In addition, the County, in support of its waiver argument, claims that since the Union failed to object to the previous unilateral implementations of its no-smoking ban prior to July 1, 1991, the Union waived its right to bargain over the implementation of the total smoking ban of July 1, 1991.

■ Regarding the County's first waiver contention, there is no question that the Union can expressly agree that an otherwise negotiable subject matter (for example, smoking) shall be the sole province of management and thereby waive the bargaining rights on that subject during the contract term. *In re Appeal from Decision of Pennsylvania Labor Relations Board,* 61 Pa.Commonwealth Ct. 207, 433 A.2d 578 (1981). The management rights clause and the health and safety provision in the CBA relied upon by the County does not make any reference or address the matter of employee smoking dur-

ing the contract term. Therefore, these provisions do not establish a waiver of the Union's right to bargain over the mandatory subject of smoking during the contract term. A waiver of bargaining rights will not be lightly inferred. It is clear that the waiver of bargaining rights may only be found when the words show a clear and unmistakable waiver. *Township of Upper Saucon v. Pennsylvania Labor Relations Board*, 152 Pa.Commonwealth Ct. 530, 620 A.2d 71 (1993); *Commonwealth v. Pennsylvania Labor Relations Board.*

The County also contends, that because the Union failed to object to the unilateral implementation of a no-smoking ban in various areas of the jail facility over a period of approximately eighteen months, it has waived any right to now request negotiations relating to the County's total no-smoking ban put into effect on July 1, 1991. This argument is unconvincing because it is not true that a right once waived under Act 195 is lost forever. A union's acquiescence to an employer's previous unilateral implementation of a bargainable subject matter does not operate as a waiver of its right to bargain over such changes for all time. *Johnson–Bateman Co.*, 295 NLRB 26, 1989 WL 224131 (1989); *National Labor Relations Board v. Miller Brewing Co.*, 408 F.2d 12 (9th Cir.1969). An opportunity once rejected does not result in a permanent "close out;" as in contract law, an offer once declined but then remade can be subsequently accepted. *Pacific Coast Association of Pulp and Paper Manufacturers v. National Labor Relations Board*, 304 F.2d 760 (9th Cir.1962); *Leeds and Northrup Co. v. National Labor Relations Board*, 391 F.2d 874 (3rd Cir.1968).

The Union, by its acquiescence to previous smoking restrictions prior to July 1, 1991, deemed them to be reasonably calculated to further the County's legitimate objectives. However, it does not support the County's waiver argument because the issue in this case is not the previous smoking restrictions that were gradually implemented. Rather, the Union's unfair labor practice of refusing to bargain in good faith only concerns the unilateral implementation of the total no-smoking ban of July 1, 1991. We

are satisfied based upon the above principles of law and to the facts of this particular case that the PLRB correctly determined that the Union's decision not to challenge the previous smoking restrictions did not constitute a waiver of its right to bargain over the present total no-smoking ban of July 1, 1991.

Therefore, we hold that the PLRB acted reasonably in concluding that the Union did not waive its right to bargain over the revised total no-smoking ban of July 1, 1991. Accordingly, the order of the trial court affirming the decision of the PLRB is affirmed.

### ORDER

AND NOW, this 26th day of May, 1995, the order of the Court of Common Pleas of Crawford County in the above-captioned matter is hereby affirmed.

KELLEY, J., dissents.