**BOROUGH OF ELLWOOD CITY, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2007.

Decided Jan. 4, 2008.

Edward Leymarie, Jr., Ellwood City, for petitioner.

Samuel B. Ickes, Harrisburg, for respondent.

Christopher J. Cimballa, Pittsburgh, for intervenor, Ellwood City Police Wage and Policy Unit.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The Borough of Ellwood City (Borough) petitions for review of a decision of the

Pennsylvania Labor Relations Board (Board) that denied exceptions filed by the Borough and made final and absolute a proposed decision and order (PDO) of a Hearing Examiner. The Ellwood City Police Wage and Policy Unit (Union) filed a charge of an unfair labor practice with the Board in regard to the Borough's adoption through resolution and then in an ordinance of a policy of prohibiting the use of tobacco products by anyone on or in Borough-owned buildings, vehicles or equipment.

The Borough questions whether a municipality employer is required to bargain with its police employees regarding ordinances that ban smoking in public buildings when, as police officers, the employees are sworn to enforce such ordinances. Respondent Board counter-states the question as whether it erred as a matter of law in deciding, consistent with precedent, that an employer must collectively bargain over employees' use of tobacco in the workplace.

I

The Union is the bargaining representative for the Borough police officers. The Hearing Examiner found that before June 19, 2006, the Borough allowed police officers to smoke and to use tobacco products in its buildings, vehicles and equipment. On that date the Borough Council adopted Resolution # 2006–10, which banned the use of such products in those places. The

Mayor advised all personnel of the new resolution, and on August 21, 2006 the Council adopted Ordinance # 2397, using virtually identical language.[1] The Borough did not bargain with the Union before adopting the Resolution and Ordinance.

On July 13, 2006, the Union filed with the Board a charge of unfair labor practices asserting that the Borough violated Sections 6(1)(a) and 6(1)(e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.6(1)(a) and 211.6(1)(e), which make it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of rights guaranteed under the PLRA and to refuse to bargain collectively with representatives of the employees. The Union also asserted a violation of the Act of June 24, 1968, P.L 237, 43 P.S. §§§ 217.1–217.10, commonly known as "Act 111," which provides for collective bargaining by police or firefighters, by unilaterally adopting a total tobacco products ban in enclosed areas of Borough property, including buildings, facilities and vehicles.

Following a hearing on September 28, 2006, the Hearing Examiner issued the PDO on December 21, 2006. He noted that an employer commits an unfair labor practice under Sections 6(1)(a) and 6(1)(e) of the PLRA if it unilaterally changes a mandatory subject of bargaining. *Plumstead Township v. Pennsylvania Labor*

---

1. Ordinance # 2397; N.T., Joint Ex. 2, provides as follows:

    WHEREAS, various studies have demonstrated the danger of tobacco products to users and persons affected second hand by the use of tobacco;

    WHEREAS, indicators show tobacco use is rising dramatically;

    WHEREAS, it is the desire of the Council of the Borough of Ellwood City to provide a tobacco free environment on and in all mu-

    nicipally owned buildings, vehicles and equipment to promote the health and welfare of its employees and citizens.

    NOW THEREFORE BE IT ORDAINED, as follows:

    1. The use of all tobacco products on or in Borough owned buildings, vehicles and equipment is forbidden.

    2. Any person found guilty of violating any provision of this Resolution shall be subject to a fine not to exceed $300.00.

*Relations Board,* 713 A.2d 730 (Pa. Cmwlth.1998). The Union had cited *Lebanon County Detectives Ass'n v. Lebanon County,* 27 PPER ¶ 27260 (Final Order, 1996), for the position that use of tobacco products by police officers is a mandatory subject of bargaining. The Borough cited *Chambersburg Area School District v. Pennsylvania Labor Relations Board,* 60 Pa.Cmwlth. 29, 430 A.2d 740 (1981), to argue that a ban on use of tobacco products by police officers to promote the health, safety and welfare of children is a managerial prerogative.

The Hearing Examiner pointed out that *Lebanon County Detectives Ass'n* referred to *Commonwealth v. Pennsylvania Labor Relations Board (Venango County Board of Assistance),* 74 Pa.Cmwlth. 1, 459 A.2d 452 (1983), and *Crawford County v. Pennsylvania Labor Relations Board,* 659 A.2d 1078 (Pa.Cmwlth.1995), as cases in which claims had been rejected that a smoking policy was central to the mission of a municipality and so was a managerial prerogative.[2] He concluded that the Borough's reliance on *Chambersburg Area School District* was misplaced because the rationale of that case applies only to school district employers, and the Borough is not engaged in the enterprise of education. Further, the Resolution and the Ordinance made no mention of the health and safety of children in particular in imposing the ban. The Hearing Examiner determined that the Borough committed an unfair labor practice and ordered it to cease refusing to bargain and to rescind the Resolution and the Ordinance.

On the Borough's exceptions, the Board stated that the law was well settled that generally the use of tobacco by members of a bargaining unit is a mandatory subject of bargaining, citing *Venango County Board of Assistance, Crawford County* and *Lebanon County Detectives Ass'n.* In the last of those decisions the Board stated that the various state and federal acts that promote clean air and warn of the risks of tobacco smoking do not amount to a bar to negotiations on this issue under Act 111. A sufficient distinction was made in *Chambersburg Area School District* because the smoking ban was essential to the school district's basic mission. The Borough had cited Section 1202(6) of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, ·as amended, 53 P.S. § 46202(6), which provides that boroughs are empowered "[t]o make such regulations as may be necessary for the health, safety, morals, general welfare and cleanliness and the beauty, convenience, comfort and safety of the borough."

In *Indiana Borough v. Pennsylvania Labor Relations Board,* 695 A.2d 470, 474 (Pa.Cmwlth.1997) (quoting *Township of Upper Saucon v. Pennsylvania Labor Relations Board,* 152 Pa.Cmwlth. 530, 535–536, 620 A.2d 71, 73–74 (1993)), the Court held that " 'an issue is deemed bargainable [under Act 111] if it bears a rational relationship to employees' duties,' " but to be deemed not subject to bargaining " 'a managerial policy concern must *substantially outweigh* any impact an issue will have on the employes.' " The rational relationship test under Act 111 is similar to the balanc-

---

2. In *Venango County Board of Assistance* the Commonwealth unilaterally imposed a ban on board of assistance workers' smoking at their workstations, and the Court determined that there was a failure to bargain in good faith and an unfair labor practice. In *Crawford County* the county unilaterally implemented a no-smoking policy in the jail, and the Court affirmed the Board's determination that the matter was subject to bargaining. In *Lebanon County Detectives Ass'n* the commissioners implemented a policy limiting smoking by all county employees in the City/County Building to a room adjacent to the cafeteria in the basement.

ing test in cases dealing with the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101 – 1101.2301 (PERA), as set forth in *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 507, 337 A.2d 262, 268 (1975): a matter is bargainable if "the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole."

The Board rejected the assertion that the Hearing Examiner erred by failing to find that the use of tobacco products by children poses a threat to the health, safety and morals of a community and that the Borough's interest in protecting children outweighed any impact on the interest of police officers. The Borough had not expressed an interest similar to that of a public school; rather, its stated reasons related to "the danger of tobacco products to users and persons affected second hand by the use of tobacco" and a generalized intent to provide a tobacco-free environment "to promote the health and welfare of its employees and citizens." Ordinance # 2397; N.T., Joint Ex. 2. In contrast, the adoption of an ordinance in December 2004 barring possession or use of tobacco products in the Borough by those under age eighteen expressly addressed the need to protect "the health and general welfare of our young citizens...." Ordinance # 2360; N.T., Respondent's Ex. 1. Because the findings and conclusions were supported, the Board dismissed the exceptions and made the PDO absolute and final.[3]

II

The Borough first asserts that this case is different from *Crawford County* and

*Venango County Board of Assistance.* In *Crawford County*, 659 A.2d at 1082, the Court stated that the balancing test set forth in *State College Area School District* "is to weigh the employees interest in the terms and conditions of their employment against the employer's interest in directing the overall scope and direction of the enterprise" and that it must be applied on a case-by-case basis. In *Chambersburg Area School District* the smoking ban was justified as an exception to the collective bargaining obligation because it was essential to the school's mission, but under different facts in *Venango County Board of Assistance* the smoking ban did not directly interfere with the agency's essential mission. The Borough argues that Section 1202(6) of The Borough Code authorizes the Borough to make regulations for the health, safety, morals and general welfare of its citizens, and it refers specifically to the ordinance adopted in December 2004. Next, the Borough states, it adopted Ordinance # 2397 on August 21, 2006 prohibiting the public from smoking in publicly owned buildings and vehicles, expressly acknowledging "the danger of tobacco products to users and persons affected second hand by the use of tobacco." The Board's decision would allow a police officer to enforce the 2004 or 2006 ordinance while smoking a cigarette.

In applying the rational relationship test, the Board concluded that this case was more similar to those in *Crawford County* and *Venango County Board of Assistance*, and it noted that protection of children was not mentioned in the enactment of Ordinance # 2397. The Borough argues, however, that the Ordinance enforces the intent of the legislature in

---

**3.** The Court must determine whether there was a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence. *Dormont Borough v. Pennsylvania Labor Relations Board*, 794 A.2d 402 (Pa.Cmwlth.2002).

adopting Section 10.1 of the Act of April 27, 1927, P.L. 465, *as amended,* commonly known as the Fire and Panic Act, added by Section 2 of the Act of December 21, 1988, P.L. 1315, 35 P.S. § 1230.1, commonly known as the Clean Indoor Air Act. Section 10.1(a) states: "The purpose of this section is to protect the public health and to provide for the comfort of all parties by regulating and controlling smoking in certain public places and at public meetings and in certain workplaces." The definition of "public place" in Section 10.1(b) includes: "[a]n enclosed, indoor area owned or operated by a State or local governmental agency and used by the general public or serving as a place of work for public employes or a meeting place for a public body. . . ."

At the outset, the Board notes that the Borough does not assert constitutional violation or lack of support for any findings; therefore, the question before the Court is whether the Board committed an error of law. The Board indicates that the Court has accorded great deference to the Board's assessment of competing concerns relevant to whether a particular matter is a mandatory subject of bargaining because of the Board's expertise, citing *Dormont Borough v. Pennsylvania Labor Relations Board,* 794 A.2d 402 (Pa.Cmwlth. 2002), and *Plumstead Township,* and that it relied upon settled precedent, namely, *Venango County Board of Assistance, Crawford County* and *Lebanon County Detectives Ass'n* in reaching its decision.

■ An employer commits an unfair labor practice when it unilaterally changes wages, hours or terms and conditions of employment without negotiations. *Appeal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978). In *Venango County Board of Assistance,* 74 Pa.

Cmwlth. at 8, 459 A.2d at 455, this Court stated:

The subject of whether employees may smoke at their workplaces appears to us to be at the center of those subjects properly described as "conditions of employment" and to be entirely unrelated to those entrepreneurial or managerial judgments fundamental to the basic direction of the enterprise and removed from the scope of mandatory bargaining by PERA Section 702, 43 P.S. § 1101.702.

Similarly, in *Crawford County,* the Court observed that the United States Supreme Court in a case involving the National Labor Relations Board had described terms and conditions of employment as matters germane to the working environment and not among decisions that lie at the core of "entrepreneurial control." The jail guards and employees at issue there had been permitted to smoke in all areas, and the employees' right to smoke was a work-related privilege. The Board states that it correctly determined that the Borough's ban on the employees' use of tobacco in or on Borough property was rationally related to the employees' duties and therefore was a mandatory subject of bargaining. Further, the Board found no support for the claim that the ban was intended to protect the health and safety of children and noted that if it was so intended it was not narrowly tailored to meet the purported interest. Also, the Borough's reliance upon *Chambersburg Area School District* is entirely misplaced, where that exception to the general rule was expressly grounded in the characteristics of the enterprise of public education.

The Board maintains that references to the 2004 Borough ordinance banning smoking by minors or to an earlier ordinance prohibiting smoking in Council Chambers during public meetings are irrelevant because those are not at issue, as are references to a less restrictive 1993 policy on employee tobacco use, which the

Hearing Examiner properly found was never enforced. As for the claim that Ordinance #2397 was requested by the legislature in the Clean Indoor Air Act, the Board cites *Mitchell's Bar & Restaurant, Inc. v. Allegheny County*, 924 A.2d 730 (Pa.Cmwlth.2007), which held that through the Clean Indoor Air Act the legislature preempted local regulation of indoor smoking. Also, precedent makes it clear that other legislation does not remove a subject from mandatory bargaining unless it explicitly and definitively prohibits bargaining over the subject.[4]

The Union as Intervenor asserts that the Board correctly determined that the Borough violated Act 111 and Sections 6(1)(a) and 6(1)(e) of the PLRA. It cites *Plumstead Township, Crawford County* and *Lebanon County Detectives Ass'n*, and it contends that the Court held in *Mitchell's Bar & Restaurant* that the Clean Indoor Air Act preempts municipalities from enacting ordinances concerning smoking in public places, invalidating an Allegheny County ordinance that prohibited smoking or possessing a lit tobacco instrument in any enclosed area to which the general public is invited or permitted, including food or beverage establishments. The Court quoted Section 15.1(a) of the Clean Indoor Air Act, added by Section 3 of the Act of December 21, 1988, P.L. 1315, 35 P.S. § 1235.1(a): "This act shall preempt and supersede any local ordinance or rule concerning the subject matter of sections 3.5 and 10.1 of this act."

## III

The Court turns first to the question of whether the Clean Indoor Air Act preempts Ordinance #2397. The Clean Indoor Air Act makes express provisions for smoking and non-smoking sections for restaurants seating more and fewer than seventy-five people, permitting some smoking, but the ordinance at issue in *Mitchell's Bar & Restaurant* prohibited all smoking in restaurants. Two restaurant owners challenged the ordinance, and the precise holding was that the legislature through its use of express language of preemption and through the substantive provisions applicable to all restaurants "intended to reserve all regulatory and legislative power for itself and to prohibit local legislation *as to the subject matter of indoor smoking in restaurants*." *Mitchell's Bar & Restaurant*, 924 A.2d at 737 (emphasis added).

The holding in *Mitchell's Bar & Restaurant* did not find preemption as to any local action regarding smoking whatsoever. Indeed, the Clean Indoor Air Act itself authorizes such action. Section 10.1(c), 35 P.S. § 1230.1(c), provides: "No person shall smoke in an area designated non-smoking by the proprietor or person in charge in a public place or at a public meeting." In *Council of Middletown Township v. Benham*, 514 Pa. 176, 181, 523 A.2d 311, 313 (1987), the Court stated: "If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted." Section 10.1(c) shows that this is not the case because it provides for designation of nonsmoking areas in public places.

On March 12, 1990, Council expressly referred to Sections 10.1 and 15.1 of the Clean Indoor Air Act and stated that Council, as "proprietor or person(s) in charge in a public place or at a public

---

4. For example, *Clarion–Limestone Area School District v. Pennsylvania Labor Relations Board*, 166 Pa.Cmwlth. 583, 646 A.2d 1280 (1994), held that the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702, does not prohibit bargaining over split sabbaticals.

meeting" designated the Council Chambers and the Conference Room as non-smoking when used in accordance with the intentions of the Act. *See* Resolution 1990–11; N.T., Respondent's Ex. 2. No question has been raised as to the propriety of Council's action as to Council Chambers in 1990, and the Court rejects the argument that all local regulation of indoor tobacco use is preempted under *Mitchell's Bar & Restaurant.*

■ On the central issue of whether Ordinance # 2397 implicates a mandatory subject of bargaining, the Court concludes that this case is distinct from those relied upon by the Board and the Union, namely *Venango County Board of Assistance, Crawford County* and *Lebanon County Detectives Ass'n.* The principle distinction is that, as the Borough contends, the Ordinance is an exercise of its general police power derived from Section 1202(6) of The Borough Code. In each of the three cases cited, the rule that was challenged was applicable solely to employees. In the present case, the stated reason for Ordinance # 2397 is Council's acknowledgement of "the dangers of tobacco products to users and to persons affected second hand by the use of tobacco" and Council's desire "to provide a tobacco free environment on and in all municipality owned buildings, vehicles and equipment to promote the health and welfare of its employees and citizens." The prohibition applies to all, citizens and employees alike, in service of the Council's chosen policy goal to promote the health and welfare of all making use of the Borough's property, not solely employees and certainly not solely the police. Contrary to the Board's assertion, the Ordinance does not prohibit police from using tobacco while on duty; rather, it renders specific locations smoke free.

As to the propriety and the import of such a goal, the Court points to the language employed to describe matters that are not subject to bargaining in the cases relied upon by the Board and the Union. In *Venango County Board of Assistance,* 74 Pa.Cmwlth. at 8, 459 A.2d at 455, such matters were said to be related to "those entrepreneurial or managerial judgments fundamental to the basic direction of the enterprise...." In *Crawford County,* 659 A.2d at 1082, stating a test derived from *State College Area School District,* the Court required a weighing of employees' interest in the terms and conditions of their employment against "the employer's interest in directing the overall scope and direction of the enterprise." In *Lebanon County Detectives Ass'n* the Board noted the rejection in *Venango County Board of Assistance* and in *Crawford County* of the claim that changed smoking policy for employees was essential to the basic mission of the county. Additionally, as to a claim in *Crawford County* based on fire safety, the Court decided that the record did not support the employer's contention that the smoking ban had a greater impact on the essential mission of the county's prison (secure incarceration of prisoners) than on employees in the bargaining unit. The Supreme Court in *State College Area School District,* when PERA was still young, warned that federal precedent interpreting private employment terms was not necessarily helpful in resolving difficulties arising in the public sector, where public employer must adhere to the statutory enactments that control the operation of the enterprise.

■ In the case *sub judice,* the Borough has authority under its specifically delegated police power to adopt measures designed to promote the health and welfare of all of its citizens. Section 1202 of The Borough Code vests enumerated specific powers in a borough, including under subsection (6) to make regulations necessary

for health, safety, morals and general welfare, and allows it to enact ordinances to exercise those powers. *Citizens for Pers. Water Rights v. Borough of Hughesville*, 815 A.2d 15 (Pa.Cmwlth.2002) (citing *Herbert v. Commonwealth*, 159 Pa.Cmwlth. 208, 632 A.2d 1051 (1993)). Protecting the health, safety and general welfare of Borough inhabitants plainly is in the public interest. *Id.* This goal reflects a legitimate "direction of the enterprise" that the Borough Council is entitled to make in the exercise of its police power. The Borough, of course, is not a school, but its overarching policy of protecting and promoting the general health and welfare of its citizens is similar to the school's mission in *Chambersburg Area School District*. In view of this fundamental concern relating to the "direction of the enterprise," the interest of the Borough overcomes the interest of the employees in maintaining the prior practices relating to smoking. Accordingly, because the Board erred in dismissing the Borough's exceptions and making the PDO absolute and final, the Court therefore reverses the Board's order.

### ORDER

AND NOW, this 4th day of January, 2008, the order of the Pennsylvania Labor Relations Board is reversed.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that "the Ordinance does not prohibit police from using tobacco while on duty; rather, it renders specific locations smoke free." Opinion at 735.

Ordinance # 2397 provides:

**WHEREAS,** various studies have demonstrated the danger of tobacco products to users and persons affected second hand by the use of tobacco;

**WHEREAS,** indicators show tobacco use is rising dramatically;

**WHEREAS,** it is the desire of the Council of the Borough of Ellwood City *to provide a tobacco free environment on and in all municipally owned buildings, vehicles and equipment* to promote the health and welfare of its employees and citizens. (emphasis added).

**NOW THEREFORE BE IT ORDAINED,** as follows:

1. *The use of tobacco products on or in Borough owned buildings, vehicles and equipment is forbidden.* (emphasis added).

2. Any person found guilty of violating any provision of this Resolution shall be subject to a fine not to exceed $300.00.

Clearly, Ordinance # 2397 precludes the use of tobacco products by police officers while on duty unless a police officer decides to light up or have a chew while in pursuit of a perpetrator on foot.

In *Crawford County v. Pennsylvania Labor Relations Board*, 659 A.2d 1078 (Pa. Cmwlth.1995), this Court addressed a similar issue as to whether the implementation of a no-smoking policy in the Crawford County Jail was the mandatory subject of bargaining with the union:

*The courts have repeatedly held that we must defer to the PLRB's interpretation of its own statute against competing interpretations. This is so because the need for expertise and judgment in drawing the line between negotiable and non-negotiable proposals is ultimately within the unique jurisdiction of the PLRB, whose decisions, if supported by substantial evidence, and conclusions, based thereon, are reasonable and not capricious, arbitrary or illegal, must be sustained ....*

In this case, we believe the deference to the final order of the PLRB ... is war-

ranted.... Accordingly, *we hold that the PLRB acted reasonably in concluding that the County committed an unfair labor practice by unilaterally implementing a total no-smoking ban on July 1, 1991 and that it failed to meet its burden demonstrating that the smoking ban in the jail facility was essential to the County's basic mission.* (emphasis added).

*Id.* at 1082.

Because the Borough's prior policy did not totally ban the use of tobacco products by police officers, I believe that any change in that policy was the subject of mandatory bargaining between the Borough and the Ellwood City Police Wage and Policy Unit.

Also, I would concur with the Pennsylvania Labor Relations Board's determination that the smoking ban was not a managerial prerogative that was essential to the County's mission to protect the health and safety of children:

The Borough argues that, like *Chambersburg [Area School District v. Pennsylvania Labor Relations Board,* [60 Pa. Cmwlth. 29], 430 A.2d 740 (1981)*], the tobacco ban should be found to be removed from collective bargaining as a managerial prerogative.* However, unlike the school district employer in Chambersburg, it is not the mission of the Borough to protect children from the dangers of tobacco use. Rather, in conducting the "rational relationship" test and balancing the interests of the Borough and the employes, it is evident that this case is more similar to Crawford County and Venago County. Those cases involved public employers under PERA [Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.101–1101.2301] who similarly wanted to impose tobacco bans. This case is also similar to Lebanon

County, which is case decided under the PLRA [Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1937, P.L. 1168, as amended, 43 P.S. §§ 211.1–211.39] and Act 111 [Act of June 24, 1968, P.L. 237, as amended, §§ 217.1–217.10]. In those cases, when balancing the competing interests, it was determined that the interest of the employes outweighed the interest of the public employer. *Balancing those competing interests in a similar fashion while applying the "rational relationship" test, we reach the same result and find that the Borough's interest in imposing the smoking ban does not substantially outweigh the impact that the imposition of the ban has on the employes in this case.*

. . . .

*In passing the resolution of June 19, 2006 and the ordinance of August 21, 2006, the Borough council did not express that it was acting with the specific intention of educating or protecting children from tobacco use in a manner comparable to that of a public school.* Rather, Borough's council's self-professed reasons for acting were related to the "danger of tobacco products to users and persons affected second hand by the use of tobacco" and a generalized intent to provide a tobacco free environment "to promote the health and welfare of its employees and citizens", an intention similar to that of the employers in Venago [*Commonwealth v. Pennsylvania Labor relations Board (Venago County Board of Assistance),* [74 Pa.Cmwlth.1], 459 A.2d 452 (1983) ].... Borough council did pass an ordinance in December of 2004 banning the use of tobacco products by persons under the age of 18 because the use of tobacco among children "is a threat to the health, safety, morals, and general welfare of our com-

munity and its young citizens." *However, the protection of children is not mentioned in the 2006 ordinance which imposed a total tobacco ban. Further, the Borough did not produce any testimony from Council members that the purpose of imposing the 2006 tobacco ban was for the protection of children . . . .*

*After a through review of the exceptions and all matters of record, the Board shall dismiss the exceptions and affirm the Hearing Examiner's conclusion that the Borough violated Section 6(1)(a) and (e) [Unfair labor practice] of the PLRA.* (citations and footnote omitted and emphasis added).

The Board's Final Order, February 20, 2007, at 3–4.

Again, "*[t]he subject of whether employees may smoke at their workplaces appears to us to be the center of those subjects properly described as 'conditions of employment' and to be entirely unrelated to those entrepreneurial or managerial judgments . . . .*" (emphasis added). *Commonwealth of Pennsylvania v. Pennsylvania Labor Relations Board,* 74 Pa.Cmwlth. 1, 459 A.2d 452, 455 (1983).

Therefore, I would affirm.

### DISSENTING OPINION BY Judge PELLEGRINI.

While I agree with that portion of the majority's holding that the Borough of Ellwood City (Borough) may ban smoking in public places, I disagree with the majority that the Borough may prohibit smoking in non-public places without first negotiating with the Ellwood City Police and Wage Policy Unit (Union).

The majority finds that Ordinance # 2397's prohibition of the use of tobacco products on Borough property is authorized under the Borough's general police

powers contained in Section 1202(6) of the Borough Code, 53 P.S. § 46202(6), to protect the health and welfare of not just Borough employees, but also its citizens from the dangers of tobacco. However, Ordinance # 2397 was not enacted pursuant to the Borough's general police powers because it does not regulate conduct throughout the Borough, but rather pursuant to the Borough's proprietary power to control conduct that takes place on its property. As the majority notes, Section 10.1(c) of the Clean Indoor Air Act, 35 P.S. § 1230.1(c), provides that "[n]o person shall smoke in any areas designated by the proprietor or person in charge of a public place or at a public meeting." Because the Clean Indoor Air Act authorizes proprietors or the person in charge of public places to ban everyone, which includes police officers, the matter is removed from collective bargaining; after all, no municipality has to negotiate with a union over a wage tax increase authorized by state law even though it diminishes union members' net pay.

However, when the employer imposes the smoking ban in non-public places, it has an obligation to negotiate over whether tobacco products can be used in those areas because, in such areas, it affects only employees, and whether employees are allowed to use tobacco products is a term and condition of employment making it a mandatory subject of bargaining. *Crawford County v. Pennsylvania Labor Relations Board,* 659 A.2d 1078 (Pa.Cmwlth. 1995); *Commonwealth v. Pennsylvania Labor Relations Board (Venango County Board of Assistance),* 74 Pa.Cmwlth. 1, 459 A.2d 452 (1983). Obviously, a public employer cannot circumvent bargaining with the Union over terms and condition of employment simply by passing an ordinance.

Because we have previously held that the use of tobacco products by members of bargaining units is a mandatory subject of bargaining, I would hold that the Borough should be required to bargain with the Union on whether the police officers would be prohibited from using tobacco products in non-public places.

Accordingly, I respectfully dissent.