**TEMPLE UNIVERSITY HEALTH SYSTEM and Temple University Hospital, Petitioners**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,** Respondent.

Commonwealth Court of Pennsylvania.

Argued May 16, 2013.

Decided June 4, 2013.

John B. Langel, Philadelphia, for petitioners.

Matthew D. Areman, Philadelphia, for intervenor Temple University Hospital Nurses Association/PASNAP.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY President Judge PELLEGRINI.

Temple University Health System and Temple University Hospital (collectively, Employer) petition for review of the orders of the Unemployment Compensation Board of Review (Board) affirming the decisions of a referee that Claimants[1] are not ineligible for benefits under Section 402(d) of the Unemployment Compensation Law (Law)[2] relating to the denial of benefits due to work stoppage caused by a labor dispute. We affirm.

Employer instituted a tuition remission/reimbursement program with Temple University prior to the Union's representation of Claimants in 2003 that applied to all bargaining unit and non-bargaining unit employees. The collective bargaining agreement (CBA) that expired in 2002 stated that tuition reimbursement would be granted in accordance with Employer's policy. Another CBA, effective October 1, 2003, through September 30, 2006, stated that full-time employees would be eligible for tuition reimbursement in accordance with Employer's policy. Effective January 1, 2004, Employer changed its tuition reimbursement policy to restructure the ben-

---

1. The Claimants are the over 1,100 employees of Employer represented by the Pennsylvania Association of Staff Nurses & Allied Professionals (Union).

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(d). That section provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . ."

efits for employees and dependents based on the employee's date of hire and to end tuition remission for new employees. On March 9, 2006, during the effective period of the 2003 CBA, Employer issued a revised tuition reimbursement policy which stated that the policy does not constitute an express or implied contract and that Employer could modify, alter, delete, suspend or discontinue the policy in its sole discretion with or without notice to its employees.

The Union represented two constituent unions, the Temple University Hospital Nurses Association (TUHNA) and the Temple University Hospital Allied Professionals (TAP) when negotiating the CBAs for the period of October 1, 2006, to September 30, 2009. The 2006 CBA between the TUHNA and Employer stated that, effective January 1, 2004, full-time employees were eligible for tuition remission at Temple University for up to six credits per semester (except for the Schools of Dentistry, Law, Medicine or Podiatry) and for tuition reimbursement at other schools in accordance with Employer's policy; that part-time employees were eligible for tuition reimbursement in accordance with Employer's policy; that the dependent children of full-time employees hired before January 1, 2004, were eligible for up to ten semesters of tuition remission at Temple University or tuition reimbursement at other schools in accordance with Employer's policy; and that the dependents of full-time employees hired after January 1, 2004, were eligible for tuition reimbursement in accordance with Employer's policy. (Reproduced Record (R.R.) at 258a.)

In March 2009, Employer instituted a revised tuition reimbursement policy that restricted reimbursement to full-time employees and discontinued reimbursement for part-time employees and the dependents of full-time employees that was specifically provided in the 2006 CBAs. The Union notified Employer that it opposed the revision and filed an unfair labor practice charge against Employer with the Pennsylvania Labor Relations Board (PLRB) under the Public Employe Relations Act (PERA) [3] on March 12, 2009. The Union employees continued to work under the existing terms and conditions of employment after the CBAs expired on September 30, 2009.

On October 6, 2009, after a hearing, a PLRB Hearing Examiner issued a proposed decision and order finding that Employer's changes to the policy constituted an unfair labor practice in violation of Section 1201(a)(1) and (5) of the PERA,[4] and Employer appealed. On January 19, 2010, the PLRB issued a Final Order rejecting Employer's and the Union's exceptions and affirming the Hearing Examiner's proposed decision. The PLRB determined that the Union did not waive its right to negotiate employee tuition reimbursement, a mandatory subject of bargaining, even though it did not grieve or file unfair labor practice charges regarding Employer's unilateral changes to the policy prior to the 2006 CBAs.[5] The PLRB also rejected

---

**3.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

**4.** Section 1201(a)(1) and (5) of the PERA states that "Public employers, their agents or representatives are prohibited from ... [i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act ... [and r]efusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative." 43 P.S. § 1101.1201(1), (5).

**5.** Citing *Crawford County v. Pennsylvania Labor Relations Board,* 659 A.2d 1078, 1083 (Pa.Cmwlth.1995), *appeal dismissed,* 543 Pa. 482, 672 A.2d 1318 (1996), the PLRB noted

Employer's claim that it had a sound arguable basis that it could unilaterally discontinue parts of the tuition reimbursement program because the CBAs stated that reimbursement shall be in accordance with Employer's policy, finding that this went to the manner of reimbursement and not what was going to be reimbursed. The PLRB directed Employer to immediately reinstate the tuition reimbursements that were in effect prior to the March 2009 revision and to immediately make the adversely affected employees whole for the benefits that they would have received under the former policy. Employer appealed the PLRB's Final Order to this Court. On March 16, 2010, the PLRB rejected Employer's request for a stay of its Final Order.

On March 18, 2010, as required by the CBA, the Union gave Employer a ten-day notice of its intent to initiate a work stoppage on March 31, 2010, unless an agreement was reached. On March 26, 2010, the Union notified Employer that the PLRB's order to restore the discontinued part-time employee and dependent tuition benefit constituted a restoration of the status quo ante of the terms and conditions of its employees' employment, and that Employer's failure to comply with the PLRB order was a disruption of the status quo. The Union also notified Employer that it was prepared to suspend any concerted action and to continue working under the current terms and conditions of employment for a reasonable time if Employer complied with the PLRB's Final Order by reinstating the tuition reimbursement benefit. That same date, Employer notified the Union that it did not violate the status quo and that it intended to pursue its appeal of the PLRB's Final Order and request a stay from this Court.

The Union initiated a work stoppage on March 31, 2010, maintaining a picket line in front of Employer's premises and Claimants did not report to work. The work stoppage ended on April 29, 2010, following a negotiated settlement and Union workers returned to work.[6] Employer discontinued its appeal of the PLRB's order in this Court following the settlement. Claimants filed claims for benefits for the period of the work stoppage, the UC Service Center determined that Claimants were not ineligible under Section 402(d), and Employer appealed.

Following a hearing, the Referee affirmed the Service Center's determinations, concluding that the work stoppage initiated by the Union on March 31, 2010, was a lockout and that Claimants were not ineligible for benefits under Section 402(d) of the Law. Employer appealed and a majority of the Board[7] affirmed the Referee's decision.

The Board noted that the courts use a maintenance of the status quo test[8] in

---

that the Union did not forever waive its right to bargain future changes to the tuition reimbursement program by its express or implied acquiescence to Employer's previous unilateral changes to the program. Thus, while the Union agreed to the changes in 2003 and did not demand bargaining over the 2006 changes, that in no way affected the Union's ability to demand bargaining over changes to the policy in 2009. (R.R. at 748a.)

6. The parties entered into new CBAs effective from April 29, 2010, to September 30, 2013.

7. Two Board members affirmed the Referee's decision and one Board member dissented.

8. "The status quo has been defined as the last actual, peaceable and lawful, non-contested status which preceded the controversy." *Fairview School District v. Unemployment Compensation Board of Review*, 499 Pa. 539, 544, 454 A.2d 517, 520 (1982). "[It] consists of the previous terms and conditions of employment, as embodied in the original collective bargaining agreement," but it does not include past practices. *Behers v. Unemployment Compensation Board of Review*, 577 Pa.

determining whether a work stoppage is a strike or a lockout, and that the Union met its burden of proving that Employer changed the status quo and that the work stoppage in this case was a lockout, giving the same reasoning as the PLRB. The Board rejected Employer's claim that it possessed unfettered discretion to alter or eliminate the tuition policy, finding that a more reasonable interpretation of the CBAs is that Employer had the right to determine how the tuition reimbursement would be paid or when it would be paid, rather than its total elimination. The Board also rejected Employer's claim that the Union waived its right to challenge Employer's changes. While the CBA language gave Employer an arguable basis for modifying the manner in which the benefit was disbursed, the Board noted that for Employer to possess the "[t]he authority to eliminate the tuition reimbursement for part-time employees and dependents of full-time employees, the 'sole discretion' language, or similar language, must have been in the CBAs rather than in [Employer]'s internal tuition reimbursement policy." (Board Opinion at 6.)

The Board also found that the Union had continued working for a reasonable period following Employer's change in the status quo, noting that the Union did not initiate a work stoppage until after the 2006 CBAs had expired; the PLRB Hearing Examiner decided the unfair labor practice charge and ordered Employer to reinstate the tuition reimbursement program as it previously existed; the PLRB issued its Final Order dismissing Employer's exceptions and affirming the Hearing Examiner's order; and the PLRB denied Employer's request for a stay of its Final Order. The Board concluded that Employer never implemented the PLRB order, thereby restoring the status quo so Employer was responsible for the March 31, 2010 work stoppage. As a result, the Board determined that the work stoppage was a lockout and Claimants were not ineligible for benefits under Section 402(d) of the Law. (Board Opinion at 7.) Employer then filed the instant appeal.[9]

In this appeal,[10] Employer claims that the Board erred in determining that Claimants were not ineligible for benefits under Section 402(d) of the Law. Specifically, Employer contends that the work stoppage was a strike because the status quo must be deemed to be the period following the expiration of the 2006 CBAs, after Employer had modified the tuition reimbursement policy, and that Claimants disrupted the status quo at that time by going on strike; and Claimants did not offer to work under the pre-existing terms

55, 67, 842 A.2d 359, 366–67 (2004). "Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract." *Fairview School District*, 499 Pa. at 547, 454 A.2d at 521.

9. This Court must affirm the Board's order unless: (1) the adjudication violated the petitioner's constitutional rights; (2) the adjudication was contrary to law; (3) an agency procedure was violated; or (4) a finding of fact necessary to the decision is not supported by substantial evidence. *Behers*, 577 Pa. at 64, 842 A.2d at 364–65. Substantial evidence is such relevant evidence which a reasonable

mind would accept as adequate to support a conclusion. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa.Cmwlth.1999). If there is substantial evidence for the Board's findings, "[t]he fact that Employer may have produced witnesses who gave a different version of the events, or that Employer might view the testimony differently than the Board, is not grounds for reversal...." *Tapco, Inc. v. Unemployment Compensation Board of Review*, 168 Pa.Cmwlth. 292, 650 A.2d 1106, 1108–09 (1994).

10. We consolidate and reorder Employer's claims in the interest of clarity.

and conditions of employment for a reasonable period of time following their strike because they conditioned their return on Employer's compliance with the PLRB's Final Order thereby disrupting that status quo. However, Employer's claims in this appeal are based upon the faulty premise that the status quo, *i.e.,* the last actual peaceable and lawful, non-contested status between the parties, was that in effect at the expiration of the 2006 CBAs which includes its unlawful change to the tuition reimbursement program.

■ Generally, the test for determining whether the work stoppage is a lockout or a strike under Section 402(d) of the Law [11] was defined by the Supreme Court in *Erie Forge & Steel Corporation v. Unemployment Compensation Board of Review (Vrotney),* 400 Pa. 440, 444–45, 163 A.2d 91, 93–94 (1960), which held:

> [W]hether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

■ This *Vrotney* test was further refined in *Philco Corporation v. Unemployment Compensation Board of Review,* 430 Pa. 101, 103, 242 A.2d 454, 455 (1968), in which the Supreme Court explained that "[t]he test of whether a work stoppage resulted from a strike or a lockout requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing."

While Employer argues that the foregoing case law restricts the status quo between the parties to what benefits were being paid at the expiration of the 2006 CBAs and not what the pre-existing contracts required, this Court has rejected this argument in *Norwin School District v. Unemployment Compensation Board of Review,* 80 Pa.Cmwlth. 67, 471 A.2d 904 (1984), *aff'd,* 510 Pa. 255, 507 A.2d 373 (1986). As this Court explained, "[t]o apply the 'maintenance of status quo' test urged by the [employer] to these circumstances would cause the absurd result that the party who breached the status quo *before* expiration of the agreement enjoys a more favorable position than it would had it breached the status quo *after* expiration. In the former situation, the new status would be the status quo regardless of the breach." *Id.* at 908 n. 5 (emphasis in original). Thus, "[a] 'maintenance of status quo' standard is, by its very terms, inapplicable to a situation where the status quo was breached before expiration of the agreement. Restoration, rather than maintenance, of the status quo is required...." *Id. See also Lozaro v. Unemployment Compensation Board of Review,* 91 Pa.Cmwlth. 428, 497 A.2d 680, 682 (1985) ("[I]n *Norwin,* our court determined

---

11. The issue of whether a work stoppage is a strike or a lockout is a mixed question of fact and law subject to our review. *Hercules v.*

*Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 77, 604 A.2d 1159, 1164 n. 3 (1992).

that the status quo had been altered prior to the expiration of the agreement because the employer unilaterally implemented changes to the benefit package. [Although maintenance of the status quo is the usual standard applied to labor disputes, in *Norwin*, alteration of the benefit package had the effect of breaching the contract; therefore, the employer was required to restore the status quo, rather than maintain it, by reinstating the previous package in order to avoid a lock out.] . . . .").

In this case, the last actual peaceable and lawful,[12] non-contested status between the parties was that which existed prior to Employer's unilateral discontinuance of the tuition reimbursement program for part-time employees and the dependents of full-time employees in March 2009 in violation of the express terms of the 2006 CBAs, and the Board properly determined that Employer breached the status quo. Prior to the work stoppage, the Union unequivocally stated in its March 26, 2010 letter to Employer that the work stoppage would not occur for a reasonable period of time [13] if Employer restored the current terms and conditions of employment; it was not conditioned on the payment of lost benefits.[14]

---

12. Employer claims that the Board erred in relying on the PLRB's decision in making this determination because Claimants did not pursue the alternative remedy of the grievance procedure in the CBAs; the PLRB's decision contained errors of fact and law; the PLRB's order was not final because the appeal in this Court was discontinued; and the Board impermissibly abdicated its authority by adhering to the PLRB's determination regarding the lawfulness of the changes to the tuition reimbursement program. All of these claims are meritless. The Union did, in fact, pursue an alternative remedy by filing the unfair labor practice charge with the PLRB and waiting for the PLRB to dispose of that charge before implementing the work stoppage. *See AFSCME, District Council 47, Local 2187 v. Pennsylvania Labor Relations Board*, 41 A.3d 213, 217–18 (Pa.Cmwlth. 2012) (holding that an employer's repudiation of a CBA's provisions can constitute both an unfair labor practice and a breach of contract). Additionally, the PLRB's Final Order finding that Employer engaged in an illegal unfair labor practice was, in fact, a final order and the argument ignores that Employer discontinued the appeal and cannot now contest that decision. *Department of Environmental Resources v. Williams*, 57 Pa.Cmwlth. 8, 425 A.2d 871, 873 (1981). Finally, the Board did not abdicate its authority by failing to make its own fact finding and by solely relying on the PLRB's decision in determining Claimants' eligibility for benefits under Section 402(d). The PLRB has exclusive jurisdiction to resolve and remedy unfair labor practices. *Hollinger v. Department of Public Welfare*, 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976). While the Board recognized the PLRB proceedings and its disposition of the unfair labor practice charge under the PERA and agreed with its conclusions, the Board made its own independent determination of the CBAs' provisions, the status quo between the parties, and whether the work stoppage was a lockout or a strike based upon the evidence presented before the Referee.

13. An offer to return to work for a reasonable period of time does not make the offer conditional. *Babcock & Wilcox Co. v. Unemployment Compensation Board of Review*, 119 Pa. Cmwlth. 566, 547 A.2d 850, 854 (1988), *appeal denied*, 523 Pa. 637, 565 A.2d 446 (1989).

14. The Union's March 26, 2010 letter to Employer specifically stated that the pending concerted action was based on Employer's unilateral elimination of the dependent tuition benefit and Employer's failure to comply with the PLRB's Final Order. (R.R. at 753a.) Specifically, the entire body of the Union's letter stated the following:

By its decision to order the re-establishment of the illegally discontinued dependent tuition benefit, the [PLRB] restored the *status quo ante* to employees' terms and conditions of employment. Both the initial decision to unilaterally eliminate the dependent tuition benefit and now [Employer]'s failure to comply with the [PLRB]'s order to restore such benefit represents a disruption of the status quo to employees' terms and conditions of employment.

Moreover, as the PLRB found, the Union did not waive its right to bargain over any aspect of the program,[15] and the CBAs' terms did not vest Employer with the sole authority to eliminate the program with respect to part-time employees and the dependents of full-time employees.[16] Accordingly, Employer was required to restore the status quo by reinstating the previous program as provided in the 2006 CBAs in order to avoid a lockout.

Employer's claim that the work stoppage was not related to its disruption of the status quo and its failure to restore the status quo is likewise unavailing. Claimants had good cause for continuing to work following Employer's disruption of the sta-

tus quo during the term of the 2006 CBAs and following their expiration. Claimants waited for the PLRB to consider and dispose of the pending unfair labor practice charge and gave Employer the opportunity to restore the status quo before instituting the work stoppage on March 31, 2010. Such a course of conduct does not preclude finding that the work stoppage was a lockout because, as outlined above, Employer unilaterally caused the disruption and was required to restore the status quo in order to avoid the lockout and Claimants could properly condition their return to work on the restoration of the status quo.[17] In short, the Board did not err in determining that the instant work stoppage was a

---

Please note that should [Employer] comply with the [PLRB]'s order to reinstate the dependent tuition benefit, the Union is prepared to suspend any concerted action and to work for a reasonable period of time under the current terms and conditions of employment, which include the restored dependent tuition benefits. This offer applies to both the Registered Nurse and professional/technical bargaining units. (*Id.*)

**15.** *See Crawford County,* 659 A.2d at 1083 ("[I]t is not true that a right once waived under [the PERA] is lost forever. A union's acquiescence to an employer's previous unilateral implementation of a bargainable subject matter does not operate as a waiver of its right to bargain over such changes for all time. An opportunity once rejected does not result in a permanent 'close out;' as in contract law, an offer once declined but then remade can be subsequently accepted.") (citations omitted).

**16.** *See* Board Opinion at 6 ("For [Employer] to claim the authority to eliminate the tuition reimbursement for part-time employees and dependents of full-time employees, the 'sole discretion' language, or similar language, must have been in the CBAs rather than in [Employer]'s internal tuition reimbursement policy."). *See also, e.g., City of Allentown v. Local 302, International Association of Fire Fighters,* 511 Pa. 275, 288, 512 A.2d 1175, 1181 (1986) ("[O]nce the matter is included

in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement. An implicit power reserved by the public employer to unilaterally alter a bargained for provision in the contract would render the bargaining process established by [Police and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10,] entirely illusory....").

**17.** *See, e.g., Norwin School District,* 510 Pa. at 273, 507 A.2d at 383 ("The only act required to end the work stoppage was the restoration of the prior health benefits coverage. When an employer has within its sole and complete control the ability to restore preexisting terms and conditions of employment, all that is required is that the employer in fact take such necessary action to restore the status quo. An offer of restoration is not sufficient where no action on the part of employees is necessary to restore the status quo which the employer unilaterally disrupted. We cannot agree that a precondition requiring the employees to return to work is consistent with the restoration of the status quo.... Therefore, under the *Vrotney* standard, [the employer]'s conditioning their provision of Blue Cross/Blue Shield coverage upon [t he claimants]' return to work, did not covert [the employer]'s lockout into a strike by [the claimants] for purposes of eligibility for unemployment compensation benefits under 402(d) of the [Law] ....") (citation omitted).

lockout and that Claimants are not ineligible for benefits under Section 402(d) of the Law.

Accordingly, the Board's orders are affirmed.

### ORDER

AND NOW, this *4th* day of *June*, 2013, the orders of the Unemployment Compensation Board of Review, dated July 12, 2012, are affirmed.